Mark L. Eisenhut, Bar No. 185039
Samuel G. Brooks, Bar No. 272107
CALL & JENSEN
A Professional Corporation
610 Newport Center Drive, Suite 700
Newport Beach, CA 92660
Tel:  (949) 717-3000
Fax:  (949) 717-3100
MEisenhut@calljensen.com
SBrooks@Calljensen.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NWHW HOLDINGS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, a Pennsylvania corporation,<br><br>Defendant. | Case No.<br><br>**COMPLAINT**<br><br><br><br>Complaint Filed:  None Set<br>Trial Date:  None Set |

Plaintiff NWHW Holdings, Inc. ("Plaintiff") by and through its counsel, hereby complains against Defendant National Union Fire Insurance Company of Pittsburgh, PA, ("Defendant"), and alleges as follows:

## PARTIES AND JURISDICTION

1. Plaintiff is a Delaware corporation with its headquarters in Florida.

2. Defendant is a Pennsylvania corporation with its headquarters in Pittsburgh, Pennsylvania.

3. This Court has diversity jurisdiction in that the matter in controversy exceeds the sum of $75,000 and the parties are citizens of different states.

## FACTUAL ALLEGATIONS

4. Plaintiff purchased a policy of insurance from Defendant, Policy Number 01-933-17-70 (the "Policy"). A copy of the Policy is attached hereto as Exhibit 1.

5. The Policy included Directors, Officers, and Private Company Liability Insurance (the "D&O Coverage Section").

6. The D&O Coverage Section provides coverage for "**Loss**," defined in relevant part as "damages, judgments, settlements, pre-judgment and post-judgment interest, . . . and **Defense Costs** . . . ." That Section defines "**Defense Costs**" as "the reasonable and necessary fees, costs and expenses . . . resulting solely from the investigation, adjustment, defense and appeal of a **Claim** against an **Insured** . . . ."

7. The definition of "**Claim**" in the D&O Coverage Section, as modified by Endorsement #8, includes "a written demand for monetary or non-monetary relief (including any request to toll or waive any statute of limitations)."

8. On or around September 13, 2019, the United States Attorney's Office for the Eastern District of Washington (the "Government") issued a written demand (the "Demand") to Plaintiff's subsidiary, New Horizons Computer Learning Centers, Inc. ("NHCLC"), in which the Government alleged NHCLC had "violated the civil False Claims Act . . . by submitting false claims to the [VA]." While such allegations were and are untrue, the False Claims Act allows the Government to recover substantial

damages from its targets. The U.S. Department of Justice declared that in fiscal year 2018 (the most recent fiscal year prior to the Demand), it had "obtained more than $2.8 billion in settlements and judgments from civil cases involving fraud and false claims."[1] By fiscal year 2021, the annual damages recovery had bloated to $5.6 billion.[2] Allegations by the Government of violations of the False Claims Act are serious, and implicitly include a demand for monetary and non-monetary relief.

9. In early December, 2019, secretly to Plaintiff, the Government entered into a settlement agreement with Computer Solutions of Spokane, Inc., the New Horizons franchisee in Spokane, WA ("NH-Spokane"). Neither Plaintiff nor NHCLC had any involvement in the discussions or negotiations leading to such agreement.

10. On December 9, 2019 the Government sent to Plaintiff a copy of the agreement with NH-Spokane. As part of such agreement, the Government had NH-Spokane agree to an "Attachment A" which falsely purported to state "facts" asserting that NHCLC engaged in conduct causing "financial loss to the VA."

11. According to the bogus statement, the conduct by NHCLC purportedly subjecting it to liability first occurred "as early as 2014, but no later than 2016."

12. The settlement agreement required NH-Spokane to pay only $100,000 of the more than $4,000,000 in damages it allegedly caused the Government. The agreement fully released NH-Spokane of any further liability for the alleged fraud. Although NH-Spokane had been fully released as of December 4, 2019, the Government's December 9 communication indicated the Government's intention to continue pursuing NHCLC and related entities (including Plaintiff). The Government thus demanded additional "documents, including the emails from Mr. Betzold and others."

---

[1] See https://www.justice.gov/opa/pr/justice-department-recovers-over-28-billion-false-claims-act-cases-fiscal-year-2018.
[2] See https://www.justice.gov/opa/pr/justice-department-s-false-claims-act-settlements-and-judgments-exceed-56-billion-fiscal-year.

13.     Before December 9, 2019, the Government had specifically indicated to Plaintiff's general counsel something along the lines of, "communications from Mr. Betzold could create liability" for NHCLC.

14.     The Demand, particularly when accompanied by the Government's December 9, 2019 communication and prior statements regarding Plaintiff's purported liability under the False Claims Act, constitute a Claim under the Policy.

15.     Plaintiff tendered the Claim to Defendant for defense and indemnity on or around March 20, 2020. On June 8, 2020, Defendant's representative, AIG Claims, Inc. ("AIG Claims") sent a letter to Plaintiff denying coverage. A copy of the letter denying coverage is attached hereto as Exhibit 2.

16.     On or about September 17, 2020, the Government delivered a 185-page presentation which it titled, "Investigation of [NHCLC]." Among other details, the presentation indicated: the investigation of NHCLC was spurred by the conduct of the NH-Spokane franchisee; and, in exchange for letting NH-Spokane off for pennies on the dollar, NH-Spokane agreed to a purported "Statement of Facts" which falsely pins liability on NHCLC for allegedly "providing direction on how to violate the [VA Rules]" and "how to avoid detection." In connection with its September 17, 2020 presentation, the Government also proposed a tolling agreement.

17.     On September 29, 2020, Plaintiff sent a letter to Defendant notifying it of the Government's presentation and proposed tolling agreement, and again requesting defense and indemnity. A copy of the letter is attached hereto as Exhibit 3.

18.     Defendant did not respond to the communication other than to state in bad faith, "As per our standard position, the matter involves a Civil Investigative Demand (Demand), which is not a Claim under the policy. We would treat it as a notice of circumstances." Defendant did not acknowledge the additional materials, or acknowledge the Policy's definition of "**Claim**," which expressly includes "any request to toll or waive any statute of limitations."

19. On November 20, 2020, Plaintiff followed up with another letter to AIG Claims requesting an immediate response to its previous letter. A copy of the letter is attached hereto as Exhibit 4.

20. After another month passed with no response, Plaintiff had its outside counsel send yet another letter to AIG, dated December 30, 2020. A copy of the letter is attached hereto as Exhibit 5.

21. Defendant did not provide an official coverage analysis until January 28, 2021, when its outside counsel sent a letter to Plaintiff's outside counsel. Defendant withdrew its previous purported denial of coverage based on the "Franchise Exclusion" in Endorsement #21, but again denied coverage on various other concocted grounds. A copy of the letter is attached hereto as Exhibit 7.

22. Having exhausted all possibility of informally persuading Defendant to honor its coverage obligations, Plaintiff initiated the Policy's dispute resolution procedures. The parties participated in a mediation session, but were unable to resolve the dispute.

23. In the meantime, Plaintiff has incurred significant defense costs in connection with the Government's claims. Plaintiff is still defending itself against the Government's claims, and its defense costs are ongoing.

## FIRST CAUSE OF ACTION

### Breach of Insurance Contract

24. Plaintiff incorporates by reference all prior paragraphs, as though set forth in full herein.

25. The Policy is a binding agreement.

26. Defendant breached its obligations under the Policy by refusing to provide a defense and indemnity to Plaintiff and its related entities.

27. Plaintiff has suffered damages as a result of Defendant's refusal to provide a defense and indemnity, and continues to suffer damages on an ongoing basis. The exact amount of damages will be proven at time of trial.

28. Plaintiff is entitled to an order requiring Defendant to specifically perform its obligations under the Policy.

## SECOND CAUSE OF ACTION

### Bad Faith Denial of Coverage

29. Plaintiff incorporates by reference all prior paragraphs, as though set forth in full herein.

30. Implied in every insurance policy is an obligation of good faith and fair dealing. To fulfill its obligation of good faith and fair dealing, an insurance company must give at least as much consideration to the interests of the insured as it gives its own interests.

31. Defendant's duty of good faith to Plaintiff included an obligation to not do anything to injure Plaintiff's right to receive the benefits of the Policy. Defendant breached this duty in a number of ways, including but not limited to, unreasonably refusing coverage, ignoring communications from Plaintiff regarding the Government's claims, and delaying responding to such communications. Defendant left its insured in a vulnerable position, requiring it to cover the costs of its own defense and seriously hampering its ability to negotiate a settlement of the covered claim. Defendant's misconduct also required Plaintiff to incur significant expense to pursue the Policy's dispute resolution procedures, including mediation and this litigation.

32. On information and belief, Defendant denied coverage deliberately, with knowledge that Plaintiff was owed a defense and indemnity under the terms and provisions of the Policy, and in conscious disregard of Plaintiff's known rights and established law. On information and belief, Defendant's conduct was committed in a fraudulent and oppressive manner. The acts and omissions described herein warrant the imposition of exemplary damages in an amount sufficient to punish and deter Defendant from engaging in similar conduct in the future.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests relief and judgment against Defendant as follows:

1. For judgment in favor of Plaintiff and against Defendant;
2. For an award of special and general damages according to proof;
3. For an award of punitive and exemplary damages;
4. For attorney's fees and costs incurred herein; and
5. For such other and further relief as the Court may deem just and proper.

Dated: May 20, 2022

CALL & JENSEN
A Professional Corporation
Mark L. Eisenhut
Samuel G. Brooks


By: */s/Samuel G. Brooks*
      Samuel G. Brooks

Attorneys for Plaintiff

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all issues so triable.

Dated: May 20, 2022

CALL & JENSEN
A Professional Corporation
Mark L. Eisenhut
Samuel G. Brooks


By: */s/Samuel G. Brooks*
     Samuel G. Brooks

Attorneys for Plaintiff